UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL J. VAN MILL and SHEILA L. VAN MILL, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a foreign corporation,<br><br>Defendant. | CASE NO. C03-2989RSM<br><br>ORDER ON DEFENDANT'S MOTION TO REDUCE EXPERT WITNESS FEES |

This matter is before the Court on defendant's motion to reduce the expert witness fees for the continued deposition of plaintiffs' designated expert witness, orthopedic surgeon William Lanzer, M.D. Plaintiff has not responded to oppose the motion, but Dr. Lanzer has himself written to the Court, expressing his "vehement disagreement" with any reduction. For the reasons set forth below, defendant's motion shall be granted.

## DISCUSSION

Defendant has already deposed Dr. Lanzer for two hours, but continued the deposition to allow five more hours on June 22, 2005. In confirming the date of the continued deposition, Dr. Lanzer's office sent a letter demanding payment in advance of $5000 for the anticipated five hours of continued

ORDER ON MOTION TO REDUCE EXPERT
WITNESS FEES - 1

deposition, with no provision for refund of any portion should the deposition be concluded in less time. Counsel responded with a request that Dr. Lanzer reduce his fee for deposition time to $600 per hour, the fee charged by defendant's own expert, orthopedic surgeon James Pritchett, M.D.  Counsel also advised Dr. Lanzer that in the event he declined to reduce his fee, this motion would be filed.   Dr. Lanzer has opposed the motion with an unfiled letter to the Court, explaining the basis for his $1000 an hour fee, and offering to name  "a dozen orthopedic surgeons" who charge that much or more in expert witness fees.[1]   Plaintiffs themselves have neither opposed the motion for reduction in fees, nor disclosed what amount they are paying this expert witness.

Federal Rule of Civil Procedure 26 provides that "[u]nless manifest justice would result . . . the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery. . . ."  Rule 26(b)(4)(C).  This section gives the district court the power to determine whether a particular fee imposed upon a party for the opposing party's expert deposition time is reasonable.   The courts have noted with concern the "continuing escalation of expert witness fees and the all too frequent attitude of experts that their fees should be set at the maximum-the-traffic-will bear." Jochims v. Isuzu Motors, LTD, 141 F.R.D. 493, 497 (S.D Iowa 1992).   A qualified expert is entitled to a reasonable fee, but "cannot be left free, in this sort of proceeding, arbitrarily to saddle his adversary with whatever price tag strikes his fancy."  Anthony v. Abbott Laboratories, 106 F.R.D. 461, 464 (D.C.R.I. 1985).

> In the final analysis, the mandate of Rule 26(b)(4)(C) is not that an expert will be paid his heart's desire, but that he will be paid a "reasonable fee."  The ultimate goal must be to calibrate the balance so that a plaintiff will not be unduly hampered in his/her efforts to attract competent experts, which at the same time, an inquiring defendant will not be unfairly burdened by excessive ransoms which produce windfalls for the plaintiff's experts.

---

[1] The Court, in turn, could name as many cases in which an expert's proposed fee was deemed excessive, and reduced it pursuant to Fed.R.Civ. Proc. 26(b)(4)(C).  Without belaboring the point, the Court lists a few:  Hose v. Chicago & North Western Transportation Co., 154 F.R.D. 222 (D.Iowa 1994) ($800 requested by plaintiff's neurologist reduced to $400); Dominguez v. Syntex Laboratories, Inc., 149 F.R.D. 166 (D.Ind. 1993) ($800 deemed excessive for plaintiff's expert, when defendant's own expert with similar expertise only charged $300);  Frederick v. Columbia University, 212 F.R.D. 176 (S.D.N.Y. 2003) (toxicologist's "exorbitant" fee of $975 per hour of deposition time reduced to $375); Edin v. Paul Revere Life Insurance Co., 188 F.R.D. 543 (D.Ariz. 1999) (orthopedic surgeon's fee of $800 for the first hour of deposition and $600 thereafter reduced to $450).

ORDER ON MOTION TO REDUCE EXPERT
WITNESS FEES - 2

Id. at 465.

In determining what fee is reasonable, the courts look to the following factors: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for available experts who command comparable respect; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be assistance in balancing the Rule 26 interests. Edin v. The Paul Revere Life Insurance Company, 188 F.R.D. 543, 546 (D. Ariz. 1999); *citing* U.S.Energy Corp. V. NUKEM, Inc., 163 F.R.D. 344 (D.Colo. 1995); Goldwater v. Postmaster General of the United States, 136 F.R.D. 337 (D.Conn. 1991); Jochims, 141 F.R.D. at 493; Hose, 154 F.R.D. at 225-26.

After analyzing these factors, the Court concludes that Dr. Lanzer's deposition fees are unreasonably high. While the Court does not question his expertise in the area of orthopedics, Dr. Lanzer's *curriculum vitae* is not any more impressive than that of Dr. Pritchett, defendant's own expert. Both doctors are board-certified orthopedic surgeons, and both are currently associate professors on the clinical faculty of the University of Washington School of Medicine. It appears that they held successive positions as chairman or chief of orthopaedic surgery at Providence Medical Center, Dr. Pritchett from 1993 to 1997, and Dr. Lanzer from 1997 to 2000. Dr. Pritchett is currently chief of orthopaedic surgery at Pacific Medical Center, while Dr. Lanzer is in private practice with Orthopedics International, LTD in Seattle. While Dr. Lanzer has listed some seventy-five "papers and presentations," these are not peer-reviewed journal articles but rather talks given in various situations, from professional symposia and meetings to hospital staff or faculty meetings. One is a talk given to University of Washington alumni. While these presentations amply demonstrate that Dr. Lanzer is highly regarded as a speaker, they are not as significant as Dr. Pritchett's sixty-three publications in peer-reviewed journals, a number of which address various aspects of total hip replacement surgery. On the other hand, of Dr. Lanzer's nineteen peer-reviewed publications, almost half are concerned with oncology, pathology, or immunology issues, while one article specifically addresses prosthetic component failure in total hip replacement surgery, the

ORDER ON MOTION TO REDUCE EXPERT
WITNESS FEES - 3

subject of this lawsuit. Overall, the expertise, education and training of plaintiffs' expert appear to be no greater than that of Dr. Pritchett.

As to the prevailing rates of comparably respected experts, the only evidence before the Court is Dr. Lanzer's fee of $1000 per hour (to defendant), and Dr. Pritchett's fee of $600. Plaintiffs have not opposed defendant's motion with any information about prevailing rates in the community in support of Dr. Lanzer's fee. Where there is scant evidence in the record as to what constitutes a "reasonable" expert fee, the Court may use its discretion in determining that reasonableness. Equal Opportunity Employment Commission v. Johnson & Higgens, Inc., 1999 WL 32909 at *4 (S.D.N.Y. 1999). Of particular import is the differential, if any, between what the expert charges the retaining party as opposed to the adverse party. "Indeed, courts most often reduce expert witness fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party." Id.; *see also* Edin, 188 F.R.D. at 547.

As noted above, plaintiffs have not disclosed what fee they are paying Dr. Lanzer. The Court might infer from that failure that they are indeed paying him less than $1000 an hour. However, the "attorney fee schedule" provided by Dr. Lanzer's office designates $1000 an hour for deposition time, attorney conferences, and review of medical records, and $2000 an hour for in-person court testimony as standard rates. This schedule would imply that the same fees are charged to both parties in the litigation. An interesting twist here, however, is the fact that Dr. Lanzer is apparently also a treating physician. Although there is a split of authority on this issue, in some jurisdictions a treating physician may be compelled to testify as a fact witness for the statutory witness fee of $40. Demar v. United States, 199 F.R.D. 617 (N.D.Ill. 2001); Fisher v. Ford Motor Company, 178 F.R.D. 195 (N.D.Ohio, 1998); Baker v. Taco Bell Corporation, 163 F.R.D. 348 (D.Colo. 1995). *See discussion in* Coleman v. Dydula, 190 F.R.D. 320, 322-323 ((W.D.N.Y. 1999).

As to factor (4), the complexity of the discovery responses provided, although Dr. Lanzer's expert reports have not been attached to the motion, they do appear elsewhere in the record. Exhibit D to April 14, 2005 Declaration of Brett Morony, Dkt. # 60. These reports, comprising two letters of one

ORDER ON MOTION TO REDUCE EXPERT
WITNESS FEES - 4

1 page and one-and-a-half pages respectively, do not appear particularly complex or highly technical in
2 nature. They do not of themselves justify an unusually high fee.

3     The sixth factor for consideration is the fee traditionally charged by the expert on related matters,
4 including his professional activity. Dr. Lanzer, in his letter to the Court, justifies his fee by stating that he
5 sees between thirty and thirty-five patients per day at an average of $175 each, and thus generates
6 approximately $6000 in charges per clinical day; surgeries generate approximately $12,000 in charges.
7 However, he has not stated what he is actually paid, as opposed to what is billed. "It is common
8 knowledge that in these times of managed health care, insurers routinely significantly reduce the amount
9 paid to physicians for patient care." Edin, 188 F.R.D. at 547 n. 5.

10     Dr. Lanzer also states that other orthopedic surgeons (whom he has not named) similarly charge
11 $1000 an hour for depositions.    As noted above, what experts charge and what the courts allow may be
12 quite different.    Further, as stated by a sister court in this circuit, while the local legal culture "may
13 willingly tolerate and pay whatever doctors charge, . . . the Court is compelled to enforce the Federal
14 Rules of Civil Procedure. . . ." Edin, 188 F.R.D. at 547. As part of its obligation " 'to patrol the
15 battlefield to insure fairness' and to eliminate 'extortionate fee setting' ", this Court may order that only a
16 reasonable fee be paid. Id.; *quoting* Anthony, 106 F.R.D. at 465.   On the evidence in the record, the
17 Court finds that a reasonable fee is the same as that paid by defendant to Dr. Pritchett, $600 per hour.

18     Accordingly, defendant's motion to reduce Dr. Lanzer's unreasonably high expert witness fee to
19 $600 per hour is GRANTED.

21  DATED this 31 day of May 2005.

                              RICARDO S. MARTINEZ
                              UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO REDUCE EXPERT
WITNESS FEES - 5